## AFFIDAVIT OF SPECIAL AGENT

I, Sean Rafferty, being duly sworn, depose and state as follows:

## AGENT BACKGROUND

1. I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2. I have been a Special Agent with the Department of Homeland Security ("DHS"), U.S. Immigration and Customs Enforcement (ICE), Homeland Security Investigations ("HSI") since December 2002. I am currently assigned to the Organized Crime Drug Enforcement Task Force ("OCDETF") Boston Strike Force in Watertown, Massachusetts, along with agents from other federal, state, and local law enforcement agencies, including the U.S. Drug Enforcement Administration ("DEA"), the Federal Bureau of Investigation ("FBI"), and the Massachusetts State Police ("MSP"). Since becoming a Special Agent with HSI, I have conducted numerous investigations of unlawful drug distribution and importation in violation of 21 U.S.C. §§ 841(a)(1), 843(b), 846, 952, 960 and 963, the laundering of drug proceeds in violation of 18 U.S.C. §§ 1956 and 1957, and have conducted and participated in wiretaps, physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, debriefings of informants and witnesses and reviewed recorded conversations, telephone, financial records and drug records. In 2003, I graduated from the Federal Law Enforcement Training Center, Criminal Investigator Training Program, and the United States Customs Service Academy, Customs Basic Enforcement School. I have a Bachelor of Science degree in Accounting Information Systems from Bryant College, Smithfield, RI, and a Master's degree in Criminal Justice from Western New England College. I have attended the

Drug Enforcement Administration (DEA) Narcotics Investigator training, DEA Telecommunication training, DEA Highway Interdiction training, DEA Jetway Interdiction training, ICE Asset Forfeiture and Financial Investigations training, and the ICE Conducting Title III intercepts training. Through my training, education and experience, I have become familiar with the manner in which illegal drugs are transported, stored, and distributed and the methods of payment for such drugs. Through my training, education and experience, I have become familiar with the manner in which narcotic proceeds are laundered both domestically and internationally.

3. I have written and/or participated in the execution of numerous search warrants resulting in the seizure of large quantities of controlled substances and paraphernalia involved in the manufacture and distribution of controlled substances, United States currency, records of narcotics and monetary transactions, drug customer lists and other documents relating to the manufacturing, transportation, ordering, purchasing and distribution of controlled substances, as well as the collection, expenditure, accounting, transportation, and laundering of drug proceeds. I have participated in the debriefing of numerous defendants, informants and witnesses who had personal knowledge regarding narcotics trafficking organizations. I have received extensive specialized training in the field of controlled substance identification, investigation and enforcement.

**PURPOSE OF AFFIDAVIT**

4. I submit this Affidavit pursuant to Federal Rule of Criminal Procedure 41 in support of applications for seventeen (17) search warrants for the following items (also referred to collectively as the Subject Devices):

Exhibit 1: Silver iPhone model A1586, IMEI: 355398076502136

Exhibit 2: Black iPhone model 1660, IC: 579C-E3085A

Exhibit 3: White and gold iPhone model A1778, IC#: 579CE3091A

Exhibit 4: Black Samsung model SM-B311V flip phone; MEID Hex: A0000048A6A88C

Exhibit 5: Gold and White iPhone model A1533; IMEI: 013888008011473

Exhibit 6: Rose Gold and White iPhone model A1662; IMEI: 358541079419017

Exhibit 7: Silver and White iPhone model A1522; IMEI: 354453066142426

Exhibit 8: Rose Gold and White iPhone model A1687; IC: 579C-E2944A

Exhibit 9: White iPhone with black Supreme case, Sim Card SM128PS1MT5T0D

Exhibit 10: White iPhone with black Apple iPhone case, Go Smart Sim Card 8901260952

Exhibit 11: Black Scan Disk Cruzer Glide 32 GB thumb drive, SDCZ60-032G

Exhibit 12: Blue ZTE model Z851M, IMEI: 866514034217672

Exhibit 13: Black Samsung model SM-G550T, IMEI: 353764/08/601239/4\

Exhibit 14: Dark Gray/Black Samsung Galaxy S8, Model EF-ZG950, S/N RF7J33F937YJCS

Exhibit 15: Black AT&T flip phone, IMEI 868899020662009

Exhibit 16: White/Silver iPhone model A1524; IMEI: 352051073945211

Exhibit 17: White Motto Droid; SIM:89148000003345772235.

5. My application is based upon the fact that there is probable cause to believe that there is evidence relating to controlled substances possession, transportation, and distribution located on the Subject Devices described herein, and used by persons believed to be involved in drug trafficking activities. Specifically, based on my knowledge, training, and experience, as well as the facts set forth in this Affidavit, there is probable cause to believe, and I do believe, that the

3

Subject Devices will contain fruits, evidence, and/or instrumentalities relating to narcotics offenses committed by persons believed to be involved in drug trafficking activities as described below. As this affidavit is submitted for the limited purpose of obtaining search warrants for the Subject Devices, I have not included all facts known to me but only those necessary to support this application.

## BACKGROUND

6. On September 25, 2018, a federal Grand Jury sitting for the District of Massachusetts returned an Indictment (18-CR-10349-WGY, hereinafter "the Indictment") charging five individuals in Count One with conspiracy to distribute and possession with to distribute 400 grams or more of fentanyl and 1 kilo or more of heroin in violation of 21 U.S.C. § 846. Two individuals were charged in Count Two with conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h). Finally, one individual was charged in Count Three with re-entry after deportation in violation of 8 U.S.C. § 1326(a). As a result of the Indictment, probable cause exists to believe that the Subjects listed below were involved in drug trafficking and money laundering activities:

a. Carlos GOMEZ, a/k/a Carlito; a/k/a Carlitos; is a Hispanic male born in 1979 in the Dominican Republic. GOMEZ is a Lawful Permanent Resident. GOMEZ is charged in Count One and Two of the Indictment. During the course of this investigation, GOMEZ possessed controlled substances and distributed controlled substances at each of the Subject Locations. GOMEZ used at least two cellular phones to initiate and complete sales of controlled substances.

b. Juan BRITO is a Hispanic male, born in 1982, who lives at 218 Walnut Street, Lawrence, MA, 01841. BRITO is unlawfully present in the United States and a citizen of the Dominican Republic. BRITO was arrested on September 24, 2018 on a criminal complaint and

warrant for a violation of Title 8, U.S.C. § 1326(a), illegal reentry after deportation which was issued in the District of Massachusetts on July 2, 2018 (18-MJ- 6239-MPK). BRITO is charged in Count One and Count Three of the Indictment. BRITO was deported to the Dominican Republic on January 5, 2016 after having been convicted in the New Hampshire state court of Title Fraud and sentenced to 12 months in prison. As a result of this and other investigations, BRITO is known to be a distributor of heroin and fentanyl and is involved in the distribution of narcotics with multiple individuals. BRITO is supplied controlled substances by GOMEZ and AQUINO CAMILO. During the course of the investigation, BRITO used at least one cellular phone to initiate and complete controlled substances transactions.

c. JOSE AQUINO CAMILO a/k/a Keko; a/k/a Kiko; is a Hispanic male, born in 1979. ACQUINO CAMILO is charged in Count One of the Indictment. On May 11, 2018, AQUINO CAMILO and GOMEZ "fronted" CW-1 with 993.4 g ± 0.2 grams of heroin while at 6 Green Street, Lawrence, MA and 296 Broadway, Lawrence, MA. On May 31, 2018, the DEA laboratory report indicated the powder substance contained heroin. Based upon the investigation, AQUINO CAMILO supplies kilogram quantities of heroin and fentanyl to BRITO and GOMEZ.

d. Carolina ALONZO is a female born in 1982 and is a United States citizen. ALONZO is married to Carlos GOMEZ, a/k/a Carlito, a/k/a Carlitos. On or about May 5, 2018, ALONZO took possession of $200,000 in cash, represented to her to be drug proceeds. She also received $2000 in cash as a "fee" for her transport of the monies from Massachusetts to New York. On or about May 6, 2018, ALONZO was seen in front of her residence, 6 Green Street, Lawrence, MA with the bag known to contain the cash before departing to New York. During her trip to New York, ALONZO used a cellular phone to text a description of herself and her location to the

individual taking delivery who was, in fact, an undercover agent. ALONZO is charged in Count Two of the Indictment. ALONZO used two cellular telephones to communicate with Cooperating Witness 1 (CW-1) and the HSI Undercover Agent in New York regarding the transportation of the $200,000.

e. Carlos COSME-CUEVAS is a male born in 1984 who currently resides at 22 Martha Street, Indian Orchard, Massachusetts. COSME-CUEVAS is charged in Count One of the Indictment. COSME CUEVAS is a runner for Jesus FIGUEROA and used at least one cellular telephone to communicate with FIGUEROA.

f. Jesus FIGUEROA is a male born in 1989 who currently resides in the Springfield, Massachusetts area. FIGUEROA is charged in Count One of the Indictment. FIGUEROA has used at least two cellular telephones to communicate with BRITO regarding the purchase and distribution of narcotics.

**Arrest of Juan BRITO**

7.   On September 24, 2018, Juan BRITO was arrested on a criminal complaint and warrant for a violation of Title 8, U.S.C. § 1326(a), illegal reentry after deportation which was issued in the District of Massachusetts on July 2, 2018 (18-MJ- 6239-MPK). BRITO was in possession of Exhibits 1 and 2 at the time of his arrest. The items have been retained at the HSI seized property evidence room and have not been searched at this point.

**Arrest of Carolina ALONZO**

8.   On October 4, 2018 at approximately 5:45 a.m., Carolina ALONZO was observed departing from her residence, 6 Green Street, Lawrence, MA, in black Honda Accord, Massachusetts registration. A traffic stop was executed on the vehicle and ALONZO was taken into custody by HSI Special Agents and a Massachusetts State Police Trooper. Exhibit 3 was

found on her person at the time of arrest. This phone has been retained at the HSI seized property evidence room and has not been searched at this point.

### Execution of Search Warrant for 6 Green Street, Lawrence, MA and seizure of Exhibit 4-8

9. On October 1, 2018, an application was made by your affiant for a search warrant for 6 Green Street, Lawrence, MA. The warrant and the supporting affidavit, 18-MJ-6282-MPK, is attached hereto and incorporated herein as Attachment A. As a result of the search at 6 Green Street, Exhibits 4, 5, 6, 7 and 8 were seized from the bedroom of Carolina ALONZO and Carlos GOMEZ. The items are retained at the HSI seized property evidence room and have not been searched at this point.

### Arrest of Carlos GOMEZ

10. On October 4, 2018, HSI Special Agents, with the assistance of U.S. Customs and Border Protection (CBP) Officers, arrested Carlos GOMEZ at Terminal E, Logan Airport, Boston, MA after GOMEZ exited Jet Blue Flight 830 from the Dominican Republic. Exhibits 9 and 10 were found in GOMEZ's pockets and were seized by HSI Special Agents. Exhibit 11 was found in GOMEZ's black satchel bag and was also seized. During his interview, after having been provided his Miranda Rights in Spanish, GOMEZ indicated that one of the telephones used the number 978-702-7893 which was identified as Target Telephone 1 (TT-1) and which was intercepted through judicial order, 18-9119-ADB. The items are retained at the HSI seized property evidence room and have not been searched at this point.

### Arrest of Jose AQUINO CAMILO

11.     On October 4, 2018, HSI Special Agents arrested Jose AQUINO CAMILO after he left his residence at 143 169th Street, Basement, Bronx, NY Special Agents informed. AQUINO CAMILO consented to the searches of his residences, located at 143 169th Street, Basement, Bronx, NY and 2406 Lorillard Place, 1C, Bronx NY, as indicated on NY Driver License #511265837, and to the search of his vehicle, a 2015 Gray Honda Accord, NY License Plate #T666815C. As a result of the search at 143 169th Street, Basement, Bronx, NY, Exhibits 12, 13, and 14 were seized from AQUINO CAMILO's bedroom.

12.    A consent search of AQUINO CAMILO's 2015 Gray Honda Accord, NY License Plate number T666815C resulted in the seizure of Exhibit 15. All items are retained at the HSI seized property evidence room and have not been searched at this point.

### Arrest of Jesus FIGUEROA

13.     On October 4, 2018, HSI Special Agents and Massachusetts State Police (MSP) Troopers arrested Jesus FIGUEROA at 138 Sargeant St. Holyoke, MA. At the time of his arrest, HSI Special Agents seized Exhibit 16, found in FIGUEROA's possession. As a result of statements made by FIGUEROA, there is reason to believe that Exhibit 16 was used to contact Juan BRITO regarding the purchase and distribution of narcotics. [1]

14.    During his post arrest interview, FIGUEROA identified supplier, BRITO as "EYE" in a photograph lineup. FIGUEROA stated that he had "EYE's" narcotic suppliers'

---

[1] On September 13, 2018, this court issued a search warrant, 18-MJ-6262-MPK, for Requested Location Information for TT-8, a cellular telephone, believed to be used by Jesus FIGUEROA which is believed to be Exhibit 16.

number and it was in his cellular telephone. FIGUEROA also stated that he could get fentanyl from the "EYE's" supplier. FIGUEROA stated he didn't know the name of "EYE's" supplier, but he knew "EYE's" supplier took a Range Rover belonging to "EYE" as collateral payment for money that was owed to him by "EYE. FIGUEROA also identified Carlos COSME CUEVAS as "Kenepa" or "Carlos." Your affiant told FIGUEROA that he wanted to ask him about the drugs FIGUEROA ordered back in May 2018. Your affiant told FIGUEROA this was the time when the guy ran away (Juan BRITO) from the police in Lawrence. FIGUEROA stated he sent the guy in the cell next to him to get the drugs. Your affiant asked what the guy's name was. FIGUEROA stated, "Carlos." Carlos COSME CUEVAS was in the cell next to FIGUEROA at the United States Marshals Service. FIGUEROA stated he had used "Carlos" to pickup drugs and to deliver money. Exhibit 16 is retained at the HSI seized property evidence room and has not been searched at this point.

### Arrest of Carlos COSME CUEVAS

15. On October 4, 2018, Carlos COSME CUEVAS ("COSME") was arrested at 22 Martha Street, Indian Orchard, MA, 01105. At the time of his arrest, Exhibit 17, a phone identified as belonging to COSME-CUEVAS was seized during the arrest. Exhibit 17 is retained at the HSI seized property evidence room and has not been searched at this point.

### Drug Traffickers' Use of Cell Phones, Generally

16. Based on training and experience, I know that most drug dealers regularly use cellular telephones to communicate about their drug trafficking and money laundering activities with customers, suppliers, and other coconspirators. In my training and experience, I also am aware that drug traffickers are often aware of law enforcement's use of electronic surveillance, and thus frequently change cellular telephone numbers and/or use multiple cellular phones at the

same time, as well as prepaid cellular phones (where the subscriber of the phone is not required to provide personal identifying information), in an effort to thwart law enforcement's use of electronic surveillance. Because cellular telephones are often a principal means of communication, drug dealers typically keep the phones in close proximity or at their residence. Additionally, in my experience, many drug dealers do not dispose of their cellular telephones when getting a new number, but instead just discard them in various locations in their residences. As a result, it is common to recover not only paper records pertaining to the use of the cellular phone by drug dealers, such as bills, call detail records, statements, and other documents, but the cellular telephones themselves, from drug dealers' residences.

17. Based upon my knowledge, training and experience, I know that a cellular telephone is a handheld wireless device used primarily for voice communication through radio signals. These telephones send signals through networks of transmitter/receivers called "cells," enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones now offer a broad range of capabilities. These capabilities include, but are not limited to: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device. Based on my training and experience, I know that many cellular telephones have the capabilities described above.

18.     Seizure of devices containing this information will provide information relating to coconspirators and accomplices. I know, based upon my training and experience, as well as consultation with other investigators, that individuals who sell illegal drugs typically use cellular telephones to communicate with their suppliers, their customers, and with other co-conspirators, and that they communicate both via both voice calls and via email and/or text messaging. I also know that persons who sell illegal drugs regularly keep records of their illegal activities. These records can include, but not limited to, contact list of buyers and sellers, ledgers of sales and money owed by customers or to suppliers, and lists of quantities and/or specific controlled substances preferred by or ordered by specific customers. Individuals engaged in drug trafficking activities often take photographs of their closest confederates. Records of drug trafficking activities can be produced and maintained on paper in a tangible form and/or by electronic means on cellular telephone, electronic/digital storage device and/or a computer. In the case of electronic or digital media, the information can be maintained on the device itself or on portable digital storage media, making it easier to conceal. I know that individuals involved in the sale of drug are very secretive in their activity in an effort to avoid detection, arrest and prosecution, and such persons usually are careful to deal only with someone they know, or who have been introduced to them by someone they know. Additionally, in the conduct of their activities, they frequently employ code words or colloquial jargon when writing, texting or speaking on the telephone or in person, being careful to avoid the use of actual names of persons or narcotic substances, which, if overheard or seen, would be incriminating to themselves or their criminal associates. From my training, experience, and information provided to me by other agents, I am aware that individuals commonly store records of the type described in Attachments B on their cellular telephones. Based on my training and experience, I also know that drug

dealers regularly use cellular telephones to conduct their drug-related business. Because cellular telephones are often the principal means by which drug dealers communicate with their suppliers and customers, drug traffickers typically keep their cellular telephones with them at all times. As a result, cellular telephones being used by an individual engaged in drug trafficking frequently leads to evidence of drug and money laundering offenses, including, but not limited to: (a) the identification of potential criminal associates, such as criminal co-conspirators, suppliers of illegal drugs, and money launderers; (b) the identification of physical locations at which illegal drugs are offloaded, stored, and/or distributed, including residences, businesses, commercial storage facilities, warehouses, and ports; and/or (c) the identification of locations where drug proceeds are stored, deposited, concealed, used in monetary and financial transactions, and laundered, including private businesses, banks, wire-remitter businesses, and other financial institutions.

19. Based on my training and experience, the location data obtained from a drug trafficker's cell phone often corroborates and verifies other information and investigative leads derived from other investigative techniques including informants, wiretaps, and visual surveillance.

## **CONCLUSION**

Based upon the evidence set forth above, as well as my knowledge, training and experience, I further submit that there is probable cause to believe that in the Subject Devices described in Exhibits 1 through 17, there exists evidence, fruits, and instrumentalities of drug trafficking and money laundering activities in violation of the Subject Offenses as set forth in Indictment number 18-CR-10349-WGY. Accordingly, I respectfully request that search

warrants be issued for the searches of the Subject Devices, further described in Attachments B-1 through B-17 for the items and information described in Attachment C.

                        Respectfully submitted,

                        */s/ Sean Rafferty*
                        Sean Rafferty, Special Agent
                        Homeland Security Investigations

Sworn and subscribed to before me this 7th day of February, 2019 in Boston, Massachusetts.

                        */s/ Page Kelley*
                        HONORABLE M. PAGE KELLEY
                        UNITED STATES MAGISRATE JUDGE
                        DISTRICT OF MASSACHUSETTS